# PITTA LLP
### Attorneys At Law

120 Broadway, 28th Floor
New York, New York 10271
Telephone: (212) 652-3890
Facsimile: (212) 652-3891

**Jane Lauer Barker**
**Partner**
Direct Dial: (212) 652-3828
jbarker@pittalaw.com

December 9, 2022

**VIA ECF**
Honorable Analisa Torres
United States District Court
Southern District of New York
40 Foley Square
New York, New York 10007

Re:    *Joseph, et al. v. Metropolitan Transportation Authority, et al.*
       **(20 CV 5776) (AT)**

Dear Judge Torres:

    This firm represents plaintiffs Wayne Joseph, Scott Denley, Anthony Barbato, Bryan Walsh, Latoria Bosley, Darnell Eason, Cerrone Danzy, Worrell Francis, Lorenzo Thousand, and Jason Vasquez ("Plaintiffs") in the above-referenced matter. Plaintiffs, along with Defendant Triborough Bridge and Tunnel Authority ("TBTA"), an affiliate of Defendant Metropolitan Transportation Authority ("MTA") (collectively "Defendants"), write to request approval of the parties' proposed settlement agreement as required by *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015).

## 1. Background

    Plaintiffs are employed as Bridge and Tunnel Officers ("BTOs") by Defendant TBTA, which is a public benefit corporation created by the Legislature to, among other things, operate, maintain, improve, reconstruct, and establish and collect tolls and other fees on seven toll bridges and two toll tunnels within the City of New York. *See* New York Public Authorities Law § 550 *et seq.* and 21 NYCRR § 1020 *et seq.*

    Plaintiffs commenced this action as a collective action on behalf of themselves and other employees similarly situated against Defendants on July 24, 2020,[1] alleging that the Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA") in two ways: (1) by engaging in a practice of underpaying overtime to BTOs by incorrectly excluding certain lump

---

[1] A First Amended Complaint was filed on September 2, 2020 (Doc. 24) and a Second Amended Complaint was filed on June 24, 2021 (Doc. 43).

Honorable Analisa Torres
December 9, 2022
Page 2

sum payments and differentials from overtime calculations; and (2) failing to timely remit overtime pay.[2] Plaintiffs proceeded with their claims on an individual basis and declined to proceed on a representative basis pursuant to Section 216(b) of the FLSA.

Subject to certain exemptions, the FLSA mandates an overtime rate at not less than one and one-half times an employee's regular rate of pay ("Regular Rate") for those who work more than 40 hours per week. 29 U.S.C. § 207(a)(1). There is a partial exemption from that requirement for public agencies with respect to the employment of individuals in law enforcement activities, provided certain requirements are met by the public agency. 29 U.S.C. § 207(k). As applied to this case, the partial law enforcement exemption permits Defendants to remit the overtime rate of one and one-half times the regular rate of pay to the BTOs for work performed in excess of 86 hours during a 14-day work period ("Regular Work Period"). 29 C.F.R. § 553.224.

As BTOs, Plaintiffs perform law enforcement duties at and near the TBTA facilities, including patrolling and securing the TBTA's property, making arrests, responding to traffic emergencies, monitoring e-mails for traffic condition and law enforcement updates, administering first aid to injured motorists, issuing summonses, assisting stranded motorists, and completing required forms and reports related to their work.

The TBTA is party to a collective bargaining agreement ("CBA") with the Bridge and Tunnels Officers Benevolent Association, Inc. ("BTOBA" or "Union"), a labor organization. The CBA governs the terms and conditions of employment of the BTOs. Plaintiffs are all members of the BTOBA and have all served in various representative capacities for the Union, such as Union officers or delegates.

The CBA permits BTOBA members who are elected officers and delegates to be released during certain times from BTO law enforcement duties to perform representational responsibilities on behalf of the BTOBA members employed by the TBTA. These responsibilities include attending BTOBA monthly meetings, attending labor-management meetings, representing BTOs in grievance and arbitration proceedings, and collective bargaining. There are six elected officers of the BTOBA ("Officers"), as well as elected or appointed delegates who are assigned to each of the bridges and tunnels where BTOs work ("Delegates").

Under the CBA, the TBTA fully releases the BTOBA President from the Regular Work Period and pays his salary at the maximum BTO rate of pay. The CBA also provides for a number of release days with pay for Officers to attend to union business. Additionally, the CBA provides that the Officers are to be assigned to a 5-day work week with steady day tours, 7:00 a.m. to 3:00 p.m. Monday through Friday, for the duration of their incumbency as BTOBA board

---

[2] On August 17, 2020, Jeffrey Mercado, a BTO, and four other BTOs employed by the TBTA filed a similar lawsuit alleging the same claims and an additional two claims, and also seeking to represent others similarly situated. *Mercado v. MTA, et al.,* 20 CV 6533 (AT). On June 24, 2021, this Court denied Defendants' motion to consolidate this case with *Mercado* (Doc. 42) and granted the *Mercado* plaintiffs' request to conditionally certify the *Mercado* action as a collective action. *Mercado* (Doc. 93).

Honorable Analisa Torres
December 9, 2022
Page 3

members in order to facilitate meetings and interact with management.[3]  The Officers, including the BTOBA President, have the right to continue working law enforcement duties during any Regular Work Period.

Plaintiffs Wayne Joseph, Scott Denley, Bryan Walsh, Darnell Eason, Anthony Barbato, and Latoria Bosley also served as Officers during various portions of the relevant time period. Officers' responsibilities include attending bargaining sessions with Defendants, enforcing the CBA through grievance and arbitrations, advising BTOs regarding pending legislation affecting law enforcement functions, community relations, representing BTOs in connection with disciplinary matters, assisting BTOs with benefit claims, and providing training and orientation to newly appointed BTOs.  While Officers functioned in those elected positions at various periods of time, those Plaintiffs continued to work as BTOs at TBTA facilities during the relevant period.  Plaintiffs Cerrone Danzy, Worrell Francis, Lorenzo Thousand, and Jason Vasquez were not Officers of the BTOBA, but were Delegates during the relevant time period, and in that capacity attended labor-management meetings and represented BTOs in grievances. However, the bulk of their time was spent performing traditional law enforcement duties.

In furtherance of the efforts by Plaintiffs and Defendants (together, "Parties") to reach a fair and reasonable settlement, the Parties exchanged relevant payroll and timekeeping records as well as other relevant documentation and information to assess the strengths and weaknesses of the underlying claims and to estimate potential damages.

The Parties also engaged in substantial, arms-length settlement negotiations, including private mediation sessions held before Dina R. Jansensen, Esq. on January 25, 2022 and May 12, 2022.  The Parties additionally exchanged numerous settlement proposals, damage calculations, and discussed relevant case law on a number of telephone calls during this period of time.  The Parties have now reached agreement on a settlement agreement and release to resolve Plaintiffs' claims as set forth in the agreement attached hereto as Exhibit "A" (the "Agreement").  The specific monetary settlement amounts for each Plaintiff are set forth below:

| Plaintiff | Settlement Amount |
|---|---|
| Wayne Joseph | $15,074.33 |
| Scott Denley | $4,456.16 |
| Anthony Barbato | $1,458.42 |
| Bryan Walsh | $8,843.32 |

---

[3] The CBA provides for bi-weekly labor-management meetings and other meetings as necessary on TBTA time, and the BTOBA representatives who attend any meetings are released for an entire tour of duty.

Honorable Analisa Torres
December 9, 2022
Page 4

| Plaintiff | Settlement Amount |
|---|---|
| Latoria Bosley | $16,228.81 |
| Darnell Eason | $10,815.64 |
| Cerrone Danzy | $14,108.09 |
| Worrell Francis | $12,605.48 |
| Lorenzo Thousand | $6,632.49 |
| Jason Vasquez | $14,936.22 |

Under the Agreement, Plaintiffs' counsel will request approval of an award of fees in the amount of $ 9,850.00, including costs.

The Agreement provides between 40% to 63% of each Plaintiff's potential recovery for the full statutory three-year period were they to succeed on all claims completely without any offsets based on Defendants' assertions. The settlement amounts differentiate between those Plaintiffs who worked all or part of the relevant time period as Officers and those Plaintiffs who worked throughout the relevant time period as BTOs with limited time spent as Delegates, in consideration of the risk involved for the Officers in litigating the question of their coverage under the FLSA and the law enforcement exemption. The Officers are provided 40% of their potential recovery (50% for plaintiff Bosley who was an elected Officer for only a portion of the relevant time period) and 63% for the remaining Plaintiffs.

## 2. The Proposed Settlement is Fair and Reasonable

To assess the reasonableness of the settlement, the Court must consider the totality of the circumstances and examine five factors identified by courts in the Second Circuit: (1) plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement is the product of arm's length bargaining between experience counsel; and (5) the possibility of fraud or collusion. *Beckert v. Ronirubinov*, 2015 WL 8773460, at *1 (S.D.N.Y. Dec. 14, 2015), quoting *Wolinsky v. Scholastic Inc.*, 900 F.Supp.2d 332, 335-36 (S.D.N.Y. 2012).

The settlement is fair and reasonable based on an evaluation of these five factors. The settlement took into account the range of possible recovery and the seriousness of the litigation risks, in particular, in connection with the threshold issue of whether Plaintiffs fall into categories exempt from the FLSA or that, during some or all of the Regular Work Period of

{00704829-1}

Honorable Analisa Torres
December 9, 2022
Page 5

Plaintiffs, they would not be considered to be performing non-union BTO duties. Defendants have argued that Plaintiffs who perform union business duties as BTOBA representatives for their full work periods or for certain days during their work periods are performing "administrative" duties, as opposed to non-union BTO duties, and thus they are completely exempt from the FLSA's overtime protections. The FLSA defines an employee employed in a bona fide administrative position as, among others, one whose "primary duty" includes the exercise of "discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a). Courts construing this definition in the context of labor organization leadership have looked to the nature and extent of the executive officer's job duties to determine their status under the FLSA. Defendants could point to case law in which union officers and business agents have been considered exempt administrative employees under the FLSA.

Alternatively, Defendants have asserted that even if Plaintiffs are non-exempt from overtime when performing duties as BTOBA Officers, any hours spent by Plaintiffs where they are released from non-union BTO duties and where Plaintiffs purport to work as BTOBA members is not considered compensable time under the FLSA, because Plaintiffs are not being suffered or permitted to work by Defendants. If Defendants were to prevail on this argument, then Plaintiffs would be entitled to far less overtime under the FLSA, which would significantly impact the amount of damages they would be owed. The settlement accounts for the significant risk to Plaintiffs' potential recovery based on this legal issue.

There is also an issue as to whether Plaintiffs should be covered by the partial law enforcement exemption and receive overtime only when they work more than 86 hours in a 14-day pay period, because during portions of that time they performed non-exempt work as BTOBA representatives. Defendants have also argued that certain Plaintiffs are not engaged in law enforcement activities because they also performed the duties of BTOBA Officers. The definition of "law enforcement activities" in 29 U.S.C. § 207 is broad and includes duties that are "incidental" to law enforcement. There are few cases interpreting the scope of "law enforcement activities" and the issue of whether the duties of those Plaintiffs who perform BTOBA duties are within that scope or incidental and, therefore, covered by the partial law enforcement exemption is an undecided legal issue in this Circuit.

As noted above, Plaintiffs Wayne Joseph, Anthony Barbato, Scott Denley, Darnell Eason, Bryan Walsh were Officers during the entire relevant time period. Plaintiff Latoria Bosley was an Officer for only a portion of the relevant time period. The remaining Plaintiffs, Cerrone Danzy, Worrell Francis, Lorenzo Thousand, and Jason Vasquez, engaged in Union business only for a day or two each month.

In addition, with respect to Plaintiffs' claim that Defendants underpaid them overtime rates because they did not include wage augments in the calculation of Plaintiffs' Regular Rates, including longevity pay, law enforcement differential check-in/check-out pay and uniform allowance. Defendants disputed those contentions, claiming that Plaintiffs improperly included

Honorable Analisa Torres
December 9, 2022
Page 6

certain payments in the regular rate, and that overtime paid under the CBA is greater than is required by the FLSA, thereby rendering damages non-existent.

As to Plaintiffs' claim that Defendants' payment of overtime was unnecessarily and unreasonably delayed in violation of the prompt pay requirements of the FLSA, Defendants contended that the timing did not violate the FLSA because they were remitted as soon as administratively feasible. In addition, Defendants claimed that the subsequent payments of overtime would have offset liquidated damages claimed from the payments owed in prior periods since Plaintiffs generally receive overtime pay in each pay period.

Overall, Defendants contest the viability of Plaintiffs' claims on numerous grounds and contend that Plaintiffs' potential recovery is either non-existent or significantly lower than estimated by Plaintiffs, and that if Defendants succeeded on even some of their defenses, Plaintiffs' recovery would be very limited. Given the fact-intensive nature of the claims and the risk that Defendants might prevail on their defenses, the settlement which provides between 40% and 63% of the potential recovery to each Plaintiff is a significant positive result for Plaintiffs, and well within the range of percentages of recovery for wage-and-hour settlements that have been approved by this Court, particularly with such sharply contested factual and legal disputes concerning Plaintiffs' claims. *See e.g. Sanchez v. Rest. 597 Inc.*, 19 Civ. 2178 (AT), 2019 U.S. Dist. LEXIS 186405, at *3-4 (S.D.N.Y. Oct. 28, 2019) (approving settlement of FLSA and New York Labor Law claims, which provided plaintiff with 18% of his potential recovery excluding attorney's fees, or 29% including attorney's fees); *Leon v. Gazivoda Realty Co.*, 18 Civ. 9723 (AT), 2019 U.S. Dist. LEXIS 160059, at *3 (S.D.N.Y. Sept. 16, 2019) (approving settlement of wage-and-hour claims, which provided plaintiff with 28% of his possible recovery excluding attorney's fees, or 45% with attorney's fees included); *Himrod v. Cygnus Med., LLC*, 19 Civ. 3417 (AT), 2020 U.S. Dist. LEXIS 502, at *3-4 (S.D.N.Y. Jan. 2, 2020) (approving settlement of FLSA and New York Labor Law claims, which provided 18% recovery to plaintiff excluding attorney's fees, or 27% recovery with attorney's fees included); *Rubio v. Pebo Traviata Pizza Corp.*, 18 Civ. 2820 (AT), 2018 U.S. Dist. LEXIS 247455, at *3-4 (S.D.N.Y. Aug. 7, 2018) (approving settlement of FLSA and New York Labor Law claims, which provided plaintiff with 54% of his potential recovery).

The second and third factors in *Beckert v. Ronirubinov*, 2015 WL 8773460, at *1, are also met because the settlement will allow both sides to avoid the significant expense of fact discovery (including depositions), dispositive motion practice, expert discovery, and potentially, a fact-intensive trial. Further litigation in this case would result in additional expense which could easily reduce the possible recovery to Plaintiffs, particularly for a case involving ten different named Plaintiffs, each with different employment histories and BTOBA participation, when serving as BTOs for TBTA.

The fourth and fifth factors in *Beckert* are also met here. The Parties are represented by counsel experienced in litigating employment and wage/hour cases. The Parties participated in two mediation sessions with experienced JAMS Mediator Jansensen over a period of a number

Honorable Analisa Torres
December 9, 2022
Page 7

of months, which led to a favorable resolution of the matter for the Plaintiffs. There is no possibility or evidence of fraud or collusion in the negotiations of the Agreement.

The Agreement does not contain any terms that would be considered inappropriate under *Cheeks v. Freeport Pancake House, Inc.,* 796 F.3d 199 (2d Cir. 2015). There is no confidentiality provision. The release is limited to the FLSA claims during the relevant time period from August 1, 2017 (three years prior to the date the lawsuit was brought) to the Court's entry of an order approving this Agreement. The scope of the release with respect to the nature of the claims and the "Released Parties" (as defined in the Agreement) is appropriately tailored given the corporate relationship among Defendants and the identified subsidiaries and affiliates. Moreover, an identical release was recently approved by another Court in this District in connection with similar FLSA claims brought by Sergeants and Lieutenants against Defendants. *See Feliciano et al. v. MTA et al.,* 18 Civ. 0026 (VSB) (ECF No. 97-2 at 12; ECF No. 99).

In sum, the Agreement is fair and reasonable and consistent with the standards established in this Circuit for approval of FLSA settlements. The Parties, therefore, respectfully request that the Court approve it.

### 3. The Proposed Attorneys' Fees and Costs are Fair and Reasonable

Plaintiffs request that the Court approve Plaintiffs' attorneys' fees, including costs, of $9,850.00. Under the terms of Plaintiffs' retainer agreements with Pitta LLP, Plaintiffs' counsel agreed to accept one-third of Plaintiffs' monetary recovery by settlement or judgment after trial or the full lodestar amount (hours reasonably expended times a reasonable hourly rate). The requested fee is approximately one-tenth of the total amount recovered for Plaintiffs. This is well below the one-third amount that courts have routinely approved in FLSA settlements in this Circuit and District. *See Najera v. Royal Bedding Co., LLC,* 2015 WL 3540719, at *3 (E.D.N.Y. June 3, 2015) (holding that a one-third contingency fee is "commonly accepted in the Second Circuit in FLSA cases"); *Gaspar v. Personal Touch Moving, Inc.,* 2014 WL 7871036, at *2 (S.D.N.Y. Dec. 3, 2015) (stating: "Fee awards representing one third of the total recovery are common in this District"); *see also Fisher v. SD Protection Inc.,* 948 F.3d 593 (2d Cir. 2020) (finding that "[e]ven if helpful, however, the percentage of attorneys' fees cannot be the determinative factor in evaluating the reasonableness of the award").

The reasonableness of the requested fee is also confirmed by applying the lodestar method. As the Court's docket shows, this lawsuit was filed as a collective action; however, a copycat lawsuit was filed on August 17, 2020 by a group of BTOs shortly after this lawsuit was filed, alleging the same claims and an additional two claims, and also seeking to represent others similarly situated. *Mercado v. MTA, et al.,* 20 CV 6533 (AT) ("*Mercado*"). On June 24, 2021, this Court granted the *Mercado* plaintiffs' request to conditionally certify the *Mercado* action as a collective action. *Mercado* (Doc. 93). In total through October 25, 2022, Plaintiffs' counsel has billed 491.10 hours in this matter, of which 171.00 were expended in connection with the litigation regarding conditional certification of the action and Defendants' proposed

Honorable Analisa Torres
December 9, 2022
Page 8

consolidation of this action with the *Mercado* action pre-certification.  Those hours would be
excluded by Plaintiffs' counsel in any fee application in this case, leaving a balance of 320.1
hours expended in the litigation which consisted of ten individual Plaintiffs.  The work consisted
of amending the complaint, engaging in discovery, analyzing payroll records for each Plaintiff,
interviewing each Plaintiff, researching the significant legal issues presented, drafting a
mediation statement, and attending two days of mediation, and preparing and analyzing damage
calculations for each Plaintiff.   The hourly rates billed in this matter for the attorneys
representing Plaintiffs were $225.00 for Joseph Bonomo, an Associate, and $275.00 for Stephen
Mc Quade, Senior Counsel, and Jane Lauer Barker, Partner.  These rates are in accordance with
rates approved by courts in this district in FLSA cases.

        To determine whether an hourly rate is reasonable, the Second Circuit Court of Appeals
has instructed district courts to "apply the prevailing rate within the district for similar services
by lawyers of comparable experience and skill." *Galeana v. Lemongrass on Broadway, Corp.*,
120 F. Supp. 3d 306, 323 (S.D.N.Y. 2014) (citing *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d
Cir. 1998)). Courts in this District have determined in recent cases that an hourly fee in the range
of $250 to $450 is appropriate for experienced litigators in wage-and-hour cases. *Pastor v. Alice
Cleaners, Inc.*, 16 Civ. 7264 (JLC), 2017 WL 5625556, at *7 (S.D.N.Y. Nov. 21, 2017)
(collecting cases).  A substantial portion of Plaintiffs' counsel's practice is non-contingency
labor and employment cases wherein clients pay hourly rates for Jane Lauer Barker of $400-
$500, Stephen McQuade $350-$400, and Joseph Bonomo $250-$300.   Based upon these rates
and the hours expended by these attorneys, the lodestar amount is $80,692.50.  The fee amount
requested is 12% of the lodestar.  As such, the requested attorneys' fees are reasonable.

### 4. Conclusion

        For all of the foregoing reasons, the Parties jointly request that the Court approve the
settlement agreement.  Thank you for your consideration.

                                        Respectfully submitted,

                                        /s/ *Jane Lauer Barker*

                                        Jane Lauer Barker

cc:  Counsel of Record (via ECF)

# EXHIBIT A

TOUNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

| | |
|---|---|
| WAYNE JOSEPH, SCOTT DENLEY, ANTHONY BARBATO, BRYAN WALSH, LATORIA BOSLEY, DARNELL EASON, CERRONE DANZY, WORRELL FRANCIS, LORENZO THOUSAND, and JASON VASQUEZ, | Civil Case No.:    1:20-CV-05776-AT |
| Plaintiffs, | ECF Case |
| -against- | |
| METROPOLITAN TRANSPORTATION AUTHORITY and TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY, | |
| Defendants. | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release is made by and between the Plaintiffs, Wayne Joseph, Scott Denley, Anthony Barbato, Bryan Walsh, Latoria Bosley, Darnell Eason, Cerrone Danzy, Worrell Francis, Lorenzo Thousand, and Jason Vasquez, on the one hand, and Defendants Metropolitan Transportation Authority ("MTA") and Triborough Bridge and Tunnel Authority ("TBTA") (each a "Defendant" and collectively, the "Defendants"), on the other hand, to fully and completely settle *Joseph et al. v. MTA and TBTA* (S.D.N.Y. Case No. 1:20-cv-05776-AT) (the "Litigation");

WHEREAS, in the Litigation, the Plaintiffs have asserted claims under the Fair Labor Standards Act ("FLSA") for allegedly unpaid overtime wages, failure to pay overtime wages on time, and other relief; and

WHEREAS, Defendants expressly deny that they and their former and current owners, partners, employees, members, agents and/or related business entities (including but not limited to any subsidiary and affiliate entities) have committed any wrongdoing or violated any laws, vigorously dispute the claims asserted in the Litigation and continue to assert that they have strong and meritorious defenses to any and all such claims; and

WHEREAS, to avoid uncertainty and the expense and burdens of further litigation and after substantial, arms-length settlement negotiations, including private mediation sessions held before Dina R. Jansenson on January 25, 2022 and May 12, 2022, the Plaintiffs and the Defendants (collectively, the "Parties") desire to resolve the Litigation.

NOW, THEREFORE, the Parties agree as follows:

{00702138-2}                                        1

1.  **Definitions**.  As used in this Settlement Stipulation, the following terms have the following meanings:

    a.    **"Agreement"** means this Settlement Agreement and Release.

    b.    **"Approval Order"** means the Court's order approving the Settlement.

    c.    **"Court"** means the United States District Court for the Southern District of New York.

    d.    **"Defendants"** means Metropolitan Transportation Authority ("MTA") and Triborough Bridge and Tunnel Authority ("TBTA").

    e.    **"Defendants' Counsel"** means Proskauer Rose LLP.

    f.    **"FLSA"** means the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*

    g.    **"FLSA Wage and Hour Claims"** means any suits, actions, causes of action, complaints, charges, grievances, claims, demands, debts, losses, obligations and/or liabilities based on an alleged violation of or related to the Fair Labor Standards Act ("FLSA"), including, but not limited to, for the failure to provide or to timely provide wages, overtime pay, failures in record keeping, off-the-clock claims, spread-of-hours pay, late payment of wages, or any other claims that were asserted or could have been asserted under the FLSA in this Litigation, whether known or unknown, suspected and/or unsuspected, concerning, relating to and/or otherwise arising out of the time each Plaintiff was employed as an Officer for the Triborough Bridge and Tunnel Authority during the Relevant Time Period.

    h.    **"Litigation"** means *Joseph et al. v. MTA and TBTA*, (S.D.N.Y. Case No. 1:20-cv-05776-AT).

    i.    **"Parties"** means the Plaintiffs and Defendants.

    j.    **"Plaintiffs"** means Wayne Joseph, Scott Denley, Anthony Barbato, Bryan Walsh, Latoria Bosley, Darnell Eason, Cerrone Danzy, Worrell Francis, Lorenzo Thousand, and Jason Vasquez.

    k.    **"Plaintiffs' Counsel"** means Pitta LLP.

    l.    **"Released Parties"** means MTA, TBTA, and any of their past or present affiliates or subsidiaries now or as they and/or their successors may be constituted in the future, including but not limited to, MTA New York City Transit, MTA Bus Company, the Manhattan and Bronx Surface Transit Operating Authority, Metro-North Commuter Railroad Company, Long Island Rail Road, Metropolitan Suburban Bus Authority (Long Island Bus), Staten Island Rapid Transit Operating Authority, MTA Construction & Development, and Grand Central Madison Concourse, its or their past or present officers, officials, directors, employees, managers, supervisors, representatives, attorneys, and agents, and its or their heirs, predecessors, successors and/or assigns.

m.   **"Relevant Time Period"** means August 1, 2017 until the date of the Approval Order.

n.   **"Settlement Amount"** means and refers to Defendants' gross payment of One Hundred Fifteen Thousand Dollars ($115,008.96) to Plaintiffs and Plaintiffs' Counsel, allocated among them as set forth in Section 2(a) below.

2.   <u>**Consideration.**</u>

(a)   <u>**Settlement Payments.**</u>  In consideration for the full and complete settlement of each Plaintiff's FLSA Wage and Hour Claims and in exchange for a release as set forth in Section 8 of the Agreement, Defendants shall pay a total settlement amount of One Hundred Fifteen Thousand Dollars ($115,008.96) (defined in Section 1 as Settlement Amount), which shall be apportioned as follows to each Plaintiff based on the damages Plaintiffs' Counsel calculated for each Plaintiff using their actual pay and hours worked data during the Relevant Period:

(i)     $15,074.33 to Wayne Joseph;

(ii)    $4,456.16 to Scott Denley;

(iii)   $1,458.42 to Anthony Barbato:

(iv)    $8,843.32 to Bryan Walsh;

(v)     $16,228.81 to Latoria Bosley;

(vi)    $10,815.64 to Darnell Eason;

(vii)   $14,108.09 to Cerrone Danzy;

(viii)  $12,605.48 to Worrell Francis;

(ix)    $6,632.49 to Lorenzo Thousand;

(x)     $14,936.22 to Jason Vasquez; and

(xi)    $9,850.00 to Plaintiffs' Counsel, as attorneys' fees and costs.

(b)   <u>**Method of Defendants' Payments.**</u>  Defendants shall remit the Settlement Payments for each Plaintiff and Plaintiffs' Counsel as follows:

(i)     Fifty percent (50%) of the Settlement Payments to Each Plaintiff shall be in the form of non-payroll checks from which no payroll taxes or withholdings shall be made to account for liquidated damages and which shall be deemed non-pensionable compensation.  These payments will be reflected on an IRS Form 1099 issued to each Plaintiff at the end of the tax year.

(ii)    The remaining fifty percent (50%) of the Settlement Payments to Each Plaintiff shall be in the form of payroll checks from which all taxes and withholdings ordinarily borne by employees shall be withheld and shall be deemed pensionable compensation to the extent allowable by the applicable pension plan and by law, which shall account for the payment of backpay and unpaid wages. These payments will be reflected on an IRS Form W-2 issued to each Plaintiff at the end of the tax year.

(iii)    Separate Settlement Payments shall made out to each Plaintiff individually, made by check, will be sent directly via overnight mail to Plaintiffs' Counsel no later than thirty (30) business days after the Court's entry of an Approval Order.

(iv)    Payment via wire to Plaintiffs' Counsel Pitta LLP, within thirty (30) business days after the Court's entry of an Approval Order.

3.    **Settlement Contingent on Court Approval.** This Agreement is contingent upon the Court's approval of the Settlement. If the Court does not approve the Settlement, this Agreement may be voided at either Party's option, in which case this Agreement will become null and void, and will not be used as evidence for any purpose, including without limitation, in connection with the Litigation or any other lawsuit, administrative or other legal proceeding, claim, investigation, or complaint. The Parties shall retain the right to pursue or challenge all claims and allegations. In such an event, the Parties shall resume the Litigation unless the Parties jointly agree to: seek reconsideration or appellate review of the decision denying approval of the Settlement; or attempt to renegotiate the Settlement and seek Court approval of a renegotiated settlement. In the event any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved, the Litigation will proceed as if no settlement had been attempted. In that event, Defendants shall retain the right to assert all applicable defenses and challenge all claims and allegations.

4.    **Process for Court Approval of Settlement.** In accordance with the Court's Order (Doc. 68), the Parties shall file the Agreement and a joint letter motion requesting that the Court approve the Agreement. Plaintiffs' Counsel shall provide drafts of the approval papers to Defendants' Counsel for comment and/or objections no later than fourteen (14) calendar days before filing them with the Court.

5.    **No Admission of Liability and No Concession as to the Merits.** This Agreement is not intended, and shall not be construed, as an admission that any Party or Released Party has violated any federal, state or local law (statutory or decisional), ordinance or regulation, breached any contract or committed any wrong whatsoever against any other Party, or an admission by any Party as to the merits or likelihood of success of any claim for liability or damages that has been or might have been asserted between the Parties. Defendants continue to dispute the merits of Plaintiffs' claims in the Litigation. The Parties enter into this Agreement to avoid the risks, uncertainty, expense, and burden of further litigation.

6.    **Plaintiffs' & Plaintiffs' Counsel's Responsibility for Any Additional Taxes.** Should any government authority determine that all or any part of the payment(s) made on an IRS

Form 1099 to any Plaintiff under this Agreement are taxable, that Plaintiff will be solely responsible for the payment of the employee share of such taxes. Plaintiffs' Counsel agrees that it will be solely responsible for the payment of any and all taxes due as a result of Plaintiffs' Counsel's receipt of all or any part of the payments made for Attorneys' Fees and Costs under this Agreement, and expressly agrees that Defendants bear no such tax responsibility.

7.   **Additional Benefits Not Triggered by the Settlement Payments**.   All payments to Plaintiffs made on an IRS Form 1099 shall be considered non-pensionable compensation and deemed to be paid to such Plaintiffs solely in the year in which such payments are actually received by the Plaintiff. The Parties agree and each Plaintiff acknowledges that Plaintiffs are not entitled to any new or additional compensation or benefits as a result of having received the payments made on an IRS Form 1099 (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the period covered by this Settlement).

8.   **Release.**

(a)   For and in consideration of the payment and promises of Defendants as set forth in this Agreement, and except as to such rights or claims as may be created by this Agreement, all Plaintiffs who sign the Agreement, on behalf of their respective current, former, and future heirs, family members, spouses, executors, administrators, trustees, agents, assigns and legal representatives, and each of their respective agents, representatives and attorneys, fully release and discharge the Released Parties (as defined in Section 1) from any and all FLSA Wage and Hour Claims (as defined in Section 1), and any and all claims for restitution (including interest) and other equitable relief, liquidated damages, interest, compensatory damages, punitive damages, penalties of any nature whatsoever, other compensation or benefits, attorneys' fees and costs that were asserted or could have been asserted under the FLSA in this Litigation, whether known or unknown, suspected and/or unsuspected, concerning, relating to and/or otherwise arising out of the time Plaintiff was employed for the Triborough Bridge and Tunnel Authority during the Relevant Time Period, which is from August 1, 2017 until the Court's entry of the Approval Order (the "Released Claims").

(b)   Moreover, each Plaintiff forever agrees (i) not to institute or receive any other relief from any other suit, administrative claim or other claim of any sort or nature whatsoever against the Released Parties relating to any of the Released Claims; and (ii) to expressly waive and assume the risk of any and all Released Claims against the Released Parties, which may exist in his or her favor during the Relevant Time Period, but of which he or she does not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would have materially affected his or her decision on whether to properly and timely remain part of the Settlement of this Litigation as a Plaintiff.

(c)    This Agreement does not, in any way, limit Plaintiffs' right to seek relief provided under or violations of a collective bargaining agreement. However, Plaintiffs who sign this Agreement waive any right to seek relief for the wage and hour claims that have been asserted or could have been asserted under the FLSA in this Litigation.

9.    **Return of Documents/Data.**    Within sixty (60) calendar days of the Approval Order, Plaintiffs' Counsel agrees to return or destroy all non-public documents and information produced by Defendants in the Litigation other than its work product, and provide written notice to Defendants' Counsel, addressed to the attention of Steven Hurd, Esq., certifying that it has returned and/or destroyed all such documents.

10.    **Mutual Full Cooperation.** The Parties will fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, the preparation and execution of documents necessary to implement this Agreement. The Parties will use their best efforts to effectuate this Agreement, including during any appeals, and will use their best efforts to obtain the Court's approval of the Settlement and to defend the Settlement from any legal challenge.

11.    **Complete Agreement.** No representation, promise, or inducement has been offered or made to induce any Party to enter into this Agreement, which contains the entire, complete, and integrated statement of all settlement terms and supersedes all previous oral or written agreements. This Agreement may not be amended or modified except by a writing signed by the Parties' authorized representatives.

12.    **Knowing and Voluntary Agreement.** The Parties enter into this Agreement knowingly, voluntarily, and with full knowledge of its significance. The Parties have not been coerced, threatened, or intimidated into signing this Agreement and have consulted with legal counsel regarding the Agreement.

13.    **Notifications and Communications.** Any notifications or communications made in connection with this Agreement shall be sent to the Parties at the addresses of their respective counsel as follows:

| *For Plaintiffs*: | *For Defendants MTA and TBTA*: |
|---|---|
| Jane Lauer Barker | Steven Hurd |
| Stephen Mc Quade | Joshua S. Fox |
| Joseph M. Bonomo | P. Kramer Rice |
| Pitta LLP | PROSKAUER ROSE LLP |
| 120 Broadway, 28th Floor | Eleven Times Square |
| New York, NY 10271 | New York, NY 10036 |
| Tel: 212-652-3890 | Tel: 212-969-3000 |

14.    **Severability.** If any part of this Agreement is found to be illegal, invalid, inoperative or unenforceable in law or equity, except the release in Section 8 above, such finding shall not affect the validity of any other part of this Agreement, which shall be construed, reformed and enforced to effectuate the purposes thereof to the fullest extent permitted by

law.

15. **Captions and Interpretations**.  Section or paragraph titles or captions contained herein are inserted as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any provision hereof.  Each term of this Agreement is contractual and not merely a recital.

16. **Binding on Assigns**.  This Agreement shall be binding upon and inure to the benefit of the Parties hereto and their respective heirs, trustees, executors, administrators, successors and assigns.

17. **Enforcement of Agreement and Governing Law**.  This Agreement will be governed by New York law.  The Parties submit to the jurisdiction of the Court for all purposes relating to the review, approval, and enforcement of this Agreement.

18. **Agreement Form and Construction.**

   (a)   The terms and conditions of this Agreement are the result of lengthy, carefully considered, arms-length negotiations between the Parties and this Agreement shall not be construed in favor of or against any of the Parties by reason of their participation in the drafting of this Agreement.

   (b)   This Agreement may be executed in electronic counterparts, and when each party has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one binding Agreement.

   (c)   This Agreement shall be construed and interpreted to effectuate the intent of the Parties, which is to provide, through this Settlement, for a complete resolution of the Litigation.

19. **Parties' Authority**.  The signatories hereto hereby represent that they are fully authorized to enter into this Agreement and bind the Parties hereto to the terms and conditions thereof.


* * *   The rest of this page is left intentionally blank   * * *

**IN WITNESS WHEREOF**, the Parties each voluntarily and without coercion have caused this Agreement to be signed on the dates entered below:

<u>**Plaintiffs:**</u>

| | |
|---|---|
| *(signature)* | 10-11-22 |
| WAYNE JOSEPH | Date |
| *(signature)* | 10·12·22 |
| SCOTT DENLEY | Date |
| *(signature)* | 10/12/22 |
| ANTHONY BARBATO | Date |
| *(signature)* | 10/12/22 |
| BRYAN WALSH | Date |
| *(signature)* | 10/11/22 |
| LATORIA BOSLEY | Date |
| *(signature)* | 10/11/22 |
| DARNELL EASON | Date |
| *(signature)* | 10/12/22 |
| CERRONE DANZY | Date |
| *(signature)* | 10/11/22 |
| WORRELL FRANCIS | Date |
| *(signature)* | 10.11.22 |
| LORENZO THOUSAND | Date |
| *(signature)* | 10-12-22 |
| JASON VASQUEZ | Date |

**Defendants**:

METROPOLITAN TRANSPORTATION AUTHORITY

By: _____  10-21-22
    **Alison MacGregor**        Date
    Deputy General Counsel – Unit Chief Labor & Employment

TRIBOROUGH BRIDGE AND TUNNEL AUTHORITY

By: _____  12-6-22        _____
    **Paul Friman**             Date
    Acting General Counsel and Corporate Secretary